# EXHIBIT A



**VIA CERTIFIED MAIL**
<u>RETURN RECEIPT REQUESTED</u>

October 28, 2016

Bruce Eppler, Environmental Manager
Anthony Skulick, Vice President / General Manager
CEMEX Construction Materials Pacific, LLC
5180 Golden Foothills Parkway, Suite 200
El Dorado Hills, CA 95762

Vincent Ramirez, Operations Manager
Brian Mastin, Manager of Environmental Affairs
West Sacramento Ready Mix
1890 Parkway Boulevard
West Sacramento, CA 95691

**VIA FIRST CLASS MAIL**

Corporate Creations Network, Inc.
Registered Agent for CEMEX Construction Materials Pacific, LLC
(Entity Number 200823410039)
1430 Truxton Ave., Fifth Floor
Bakersfield, CA 93301

Re:   Notice of Violations and Intent to File Suit under the Federal Water
      Pollution Control Act

Dear Messrs. Eppler, Skulick, Ramirez, and Mastin:

      I am writing on behalf of The California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Clean Water Act (the "Act") that CSPA believes are occurring at CEMEX Construction Materials Pacific, LLC's industrial facility located at 1890 Parkway Boulevard in West Sacramento, California ("Facility"), which operates under the name of "West Sacramento Ready Mix."  CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Sacramento River, the Sacramento-San Joaquin Delta and other California waters.  This letter is

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 2 of 15

being sent to CEMEX Construction Materials Pacific, LLC, Bruce Eppler, Tony Skulick, and Vincent Ramirez as the responsible owners or operators of the Facility (all recipients are hereinafter collectively referred to as "CEMEX").

This letter addresses CEMEX's unlawful discharge of pollutants from the Facility to the Sacramento River Deep Water Ship Channel, which flows to the Sacramento River and then into the Sacramento-San Joaquin River Delta (the "Delta"). The Facility is discharging storm water pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. CA S000001, State Water Resources Control Board ("State Board") Order No. 97-03-DWQ ("1997 Permit") as renewed by Order No. 2015-0057-DWQ ("2015 Permit"). The 1997 Permit was in effect between 1997 and June 30, 2015, and the 2015 Permit went into effect on July 1, 2015. As explained below, the 2015 Permit maintains or makes more stringent the same requirements as the 1997 Permit. As appropriate, CSPA refers to the 1997 and 2015 Permits in this letter collectively as the "General Permit." The Waste Discharger identification number for the Facility listed on documents submitted to the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") is 5S57I024310. The Facility is engaged in ongoing violations of the substantive and procedural requirements of the General Permit.

Section 505(b) of the Clean Water Act requires a citizen to give notice of intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act (33 U.S.C. § 1365(a)). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA") and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violations and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, CSPA hereby places CEMEX on formal notice that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CSPA intends to file suit in federal court against CEMEX under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the Clean Water Act and the General Permit. These violations are described more extensively below.

I.   **Background.**

In its Notice of Intent to Comply with the Terms of the General Permit ("NOI"), CEMEX certifies that the Facility is classified under SIC codes 3273 and 5032. The Facility first received its coverage under the General Permit on or about June 17, 2013. However, on information and belief, CSPA alleges that the Facility was operating without a permit and discharging polluted storm water since at least November 21, 2012. The Facility collects and discharges storm water from its 27 acre industrial site through at least one outfall. On information and belief, CSPA alleges the outfall discharges storm water that is commingled with runoff from the Facility's industrial processing areas. The outfall discharges to channels that flow into the Sacramento River Deep Water Ship Channel, which flows to the Sacramento River and then into the Delta.

Case 2:17-cv-00272-MCE-CKD   Document 1-1   Filed 02/08/17   Page 4 of 18

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 3 of 15

   The Regional Board has identified beneficial uses of the Central Valley Region's waters and established water quality standards for the Sacramento River Deep Water Shipping Channel, Sacramento River and its tributaries, and the Delta, in "The Water Quality Control Plan (Basin Plan) for the California Regional Water Quality Control Board, Central Valley Region – The Sacramento River Basin and The San Joaquin River Basin," generally referred to as the Basin Plan, and the "Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary."  *See* http://www.waterboards.ca.gov/centralvalley/water_issues/basin_plans/ sacsjr.pdf; http://www.waterboards.ca.gov/waterrights/water_issues/programs/bay_delta/ wq_control_plans/2006wqcp/docs/2006_plan_final.pdf.  The beneficial uses of these waters include, among others, domestic and municipal supply, water contact recreation, non-contact water recreation, wildlife habitat, warm and cold freshwater habitat, and fish spawning.  The non-contact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but where there is generally no body contact with water, nor any likelihood of ingestion of water.  These uses include, but are not limited to, picnicking, sunbathing, hiking, camping, boating, . . . hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities."  Basin Plan at II-1.00 – II-2.00.  Visible pollution, including cloudy or muddy water from industrial areas, impairs people's use of the Sacramento River and the Delta for contact and non-contact water recreation.

   The Basin Plan establishes water quality standards for the Sacramento River and its tributaries and the Delta.  It includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life."  *Id.* at III-8.01.  It provides that "[w]ater shall not contain floating material in amounts that cause nuisance or adversely affect beneficial uses."  *Id.* at III-5.00.  It provides that "[w]ater shall be free of discoloration that causes nuisance or adversely affects beneficial uses."  *Id.*  It provides that "[w]aters shall not contain suspended materials in concentrations that cause nuisance or adversely affect beneficial uses."  *Id.* at III-7.00.  The Basin Plan also prohibits the discharges of oil and grease, stating that "[w]aters shall not contain oils, greases, waxes, or other materials in concentrations that cause nuisance, result in a visible film or coating on the surface of the water or on objects in the water, or otherwise adversely affect beneficial uses."  *Id*. at III-6.00.  The Basin Plan provides that the pH shall not be depressed below 6.5 nor raised above 8.5.  *Id*.  The Basin Plan requires that "[w]aters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses."  *Id*. at III-9.00.

   Table III-1 of the Basin Plan provides a water quality objective ("WQO") for iron of 0.3 mg/L.

   The Basin Plain provides that "[a]t a minimum, water designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the maximum contaminant levels (MCLs) specified in the following provisions of Title 22 of the California Code of Regulations, which are incorporated by reference into this plan: Tables 64431-A (Inorganic Chemicals) and 64431-B (Fluoride) of Section 64431, Table 64444-A (Organic Chemicals) of Section 64444, and Tables 64449-A (Secondary Maximum Contaminant

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 4 of 15

Levels-Consumer Acceptance Limits) and 64449-B (Secondary Maximum Contaminant Levels-Ranges) of Section 64449." *Id*. at III-3.00. Table 64449-A provides a Secondary MCLs ("SMCL") for iron of 0.3 mg/L.

The EPA has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").[1] The following benchmarks have been established for pollutants discharged by CEMEX: pH – 6.0 - 9.0 standard units ("s.u."); total suspended solids ("TSS") – 100 mg/L; oil & grease ("O&G") – 15 mg/L; and iron – 1.0 mg/L.

These benchmarks are reflected in the 2015 Permit in the form of Numeric Action Levels ("NALs"). The 2015 Permit incorporates annual NALs, which reflect the 2008 EPA Multi-Sector General Permit benchmark values, and instantaneous maximum NALs, which are derived from a Water Board dataset. The following annual NALs have been established under the 2015 Permit: TSS – 100 mg/L; O&G – 15 mg/L; and iron – 1.0 mg/L. The 2015 Permit also establishes the following instantaneous maximum NALs: pH – 6.0-9.0 s.u.; TSS – 400 mg/L; and O&G – 25 mg/L.

## II.     Alleged Violations of the NPDES Permit.

### A.     Discharges in Violation of the Permit

CEMEX has violated and continues to violate the terms and conditions of the General Permit. Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Permit. The General Permit prohibits any discharges of storm water associated with industrial activities or authorized non-storm water discharges that have not been subjected to BAT or BCT. Effluent Limitation B(3) of the 1997 Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. The 2015 Permit includes the same effluent limitation. *See* 2015 Permit, Effluent Limitation V(A). BAT and BCT include both nonstructural and structural measures. 1997 Permit, Section A(8); 2015 Permit, Section X(H). Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand, and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. *Id*.; 40 C.F.R. § 401.15.

In addition, Discharge Prohibition A(1) of the 1997 Permit and Discharge Prohibition III(B) of the 2015 Permit prohibit the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States. Discharge Prohibition A(2) of the 1997 Permit and Discharge Prohibition III(C) of the

---

[1] The Benchmark Values can be found at:
http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf.

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 5 of 15

2015 Permit prohibit storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

    Receiving Water Limitation C(1) of the 1997 Permit and Receiving Water Limitation VI(B) of the 2015 Permit prohibit storm water discharges and authorized non-storm water discharges that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit also prohibit storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards. The General Permit does not authorize the application of any mixing zones for complying with Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) of the 2015 Permit.  As a result, compliance with this provision is measured at the Facility's discharge monitoring locations.

    CEMEX has discharged and continues to discharge storm water with unacceptable levels of pH, TSS, and iron in violation of the General Permit.  CEMEX's sampling and analysis results reported to the Regional Board confirm discharges of specific pollutants and materials other than storm water in violation of the Permit provisions listed above.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

    The following discharges of pollutants from the Facility have contained observations and measurements of pollutants in excess of applicable numerical and narrative water quality standards established in the Basin Plan.  They have thus violated Discharge Prohibitions A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A), VI(B), and VI(C) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit, and Effluent Limitation V(A) of the 2015 Permit.

| Date | Parameter | Observed Concentration/ Conditions | Basin Plan Water Quality Objective | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 3/7/2016 | pH | 8.6 | 6.5 – 8.5 | SW-1 |
| 12/1/2014 | pH | 8.7 | 6.5 – 8.5 | SW-1 |
| 11/20/2013 | pH | 8.56 | 6.5 – 8.5 | SW-1 |
| 3/7/2016 | Iron | 3.2 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |
| 1/5/2016 | Iron | 14 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |
| 12/10/2015 | Iron | 42 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |
| 12/1/2014 | Iron | 19 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 6 of 15

| | | | | |
|---|---|---|---|---|
| 3/6/2014 | Iron | 0.78 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |
| 11/20/2013 | Iron | 4.5 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | SW-1 |
| 12/2/2014 | Narrative | Brown; Milky; Dirt | Basin Plan at III-5.00; Basin Plan at III-9.00; Basin Plan at III-7.00 | SW-1 |
| 2/7/2015 | Narrative | Brown; Slightly cloudy | Basin Plan at III-5.00; Basin Plan at III-9.00 | SW-1 |
| 3/6/2014 | Narrative | Brown; Slightly cloudy | Basin Plan at III-5.00; Basin Plan at III-9.00 | SW-1 |
| 11/20/2013 | Narrative | Slightly cloudy; Silt | Basin Plan at III-9.00; Basin Plan at III-7.00 | SW-1 |

The information in the above table reflects data gathered from CEMEX's self-monitoring during the 2013-2014 and 2014-2015 wet seasons, as well as the 2015-2016 reporting year. CSPA alleges that since at least June 17, 2013, and continuing through today, CEMEX has discharged storm water contaminated with pollutants at levels that exceed one or more applicable water quality standards, including but not limited to each of the following:

- pH – 6.5 – 8.5
- Iron – 0.3 mg/L (WQO)
- Iron – 0.3 mg/L (SMCL)
- Discoloration – water shall be free of discoloration that causes nuisance or adversely affects beneficial uses.  Basin Plan at III-5.00.
- Turbidity – waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.  Basin Plan at III-9.00.
- Suspended solids – waters shall not contain suspended materials in concentrations that cause nuisance or adversely affect beneficial uses.  Basin Plan at III-7.00.

The following discharges of pollutants from the Facility have violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(B) and III(C) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 7 of 15

| Date | Parameter | Observed Concentration | EPA Benchmark Value /Annual NAL | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 3/7/2016 | Total Suspended Solids | 790 mg/L | 100 mg/L | SW-1 |
| 1/5/2016 | Total Suspended Solids | 340 mg/L | 100 mg/L | SW-1 |
| 12/10/2015 | Total Suspended Solids | 820 mg/L | 100 mg/L | SW-1 |
| 2015-2016 reporting year | Total Suspended Solids | 650 mg/L | 100 mg/L | All discharge points[2] |
| 12/1/2014 | Total Suspended Solids | 840 mg/L | 100 mg/L | SW-1 |
| 11/20/2013 | Total Suspended Solids | 240 mg/L | 100 mg/L | SW-1 |
| 3/7/2016 | Iron | 3.2 mg/L | 1 mg/L | SW-1 |
| 1/5/2016 | Iron | 14 mg/L | 1 mg/L | SW-1 |
| 12/10/2015 | Iron | 42 mg/L | 1 mg/L | SW-1 |
| 2015-2016 reporting year | Iron | 19.7 mg/L | 1 mg/L | All discharge points[3] |
| 12/1/2014 | Iron | 19 mg/L | 1 mg/L | SW-1 |
| 11/20/2013 | Iron | 4.5 mg/L | 1 mg/L | SW-1 |

The information in the above table reflects data gathered from CEMEX's self-monitoring during the 2013-2014 and 2014-2015 wet seasons and the 2015-2016 reporting year. CSPA notes that CEMEX's sampling results from the 2015-2016 reporting year have now placed the Facility in Level 1 status pursuant to the General Permit. CSPA alleges that since at least June 17, 2013, CEMEX has discharged storm water contaminated with pollutants at levels that exceed the applicable EPA Benchmarks and NALs for TSS and iron.

CSPA's investigation, including its review of CEMEX's Storm Water Pollution Prevention Plan ("SWPPP"), CEMEX's analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of applicable water quality standards, and EPA benchmark values and NALs, indicates that CEMEX has not implemented BAT and BCT at the Facility for its discharges of pH, TSS, iron, and potentially other pollutants in violation of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit. CEMEX was required to have implemented BAT and BCT by no later than October 1, 1992, or since the date the Facility opened. Thus, CEMEX is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT.

---

[2] This value is represents the average of all TSS measurements taken at the Facility during the 2015-2016 reporting year and is higher than 100 mg/L, the annual NAL for TSS.

[3] This value is represents the average of all iron measurements taken at the Facility during the 2015-2016 reporting year and is higher than 1 mg/L, the annual NAL for iron.

Notice of Violations and Intent to File Suit

Case 2:17-cv-00272-MCE-CKD   Document 1-1   Filed 02/08/17   Page 9 of 18

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 8 of 15

Case 2:17-cv-00272-MCE-CKD   Document 1-1   Filed 02/08/17   Page 9 of 18

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 8 of 15

     In addition, the numbers listed above indicate that the Facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A), VI(B), and VI(C) of the 2015 Permit.  CSPA alleges that such violations also have occurred and will occur on other rain dates, including on information and belief every significant rain event that has occurred since June 17, 2013, and that will occur at the Facility subsequent to the date of this Notice of Violation and Intent to File Suit. Attachment A, attached hereto, sets forth each of the specific rain dates on which CSPA alleges that CEMEX has discharged storm water containing impermissible and unauthorized levels of pH, TSS, and iron in violation of Section 301(a) of the Act as well as Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2), and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; and Effluent Limitation V(A), Discharge Prohibitions III(B) and III(C) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit.[4]

     Further, CSPA puts CEMEX on notice that 2015 Permit Effluent Limitation V(A) is a separate, independent requirement with which BWP must comply, and that carrying out the iterative process triggered by exceedances of the NALs listed at Table 2 of the 2015 Permit does not amount to compliance with the Permit's Effluent Limitations, including CEMEX's obligation to have installed BAT and BCT at the Facility.  While exceedances of the NALs demonstrate that a facility is among the worst performing facilities in the State, the NALs do not represent technology based criteria relevant to determining whether an industrial facility has implemented BMPs that achieve BAT/BCT.[5]  Finally, even if CEMEX submits an Exceedance Response Action Plan(s) pursuant to Section XII of the 2015 Permit, the violations of Effluent Limitation V(A) described in this Notice Letter are ongoing.

     These unlawful discharges from the Facility are ongoing.  Each discharge of storm water containing any of these pollutants constitutes a separate violation of the General Permit and the Act.  Each discharge of storm water constitutes an unauthorized discharge of pH, TSS, iron, and storm water associated with industrial activity in violation of Section 301(a) of the CWA.  Each day that the Facility operates without implementing BAT/BCT is a violation of the General Permit.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, CEMEX is subject to penalties for violations of the General Permit and the Act since June 17, 2013.

---

[4] The rain dates on the attached table are all the days when 0.1" or more rain was observed at a weather station in Sacramento, approximately 2.7 miles from the Facility.  The data was accessed via http://ipm.ucanr.edu/calludt.cgi/WXDESCRIPTION?STN=BRYTE.A (Last accessed on October 27, 2016).

[5] The NALs are not intended to serve as technology-based or water quality-based numeric effluent limitations.  The NALs are not derived directly from either BAT/BCT requirements or receiving water objectives. NAL exceedances defined in [the 2015] Permit are not, in and of themselves, violations of [the 2015] Permit." 2015 Permit, Finding 63, p. 11.  The NALs do, however, trigger reporting requirements.  *See* 2015 Permit, Section XII

Notice of Violations and Intent to File Suit

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 9 of 15

### B.   Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program for the Facility.

The 1997 Permit requires facility operators to develop and implement an adequate Monitoring and Reporting Program before industrial activities begin at a facility. *See* 1997 Permit, § B(1). The 2015 Permit includes similar monitoring and reporting requirements. *See* 2015 Permit, § XI. The primary objective of the Monitoring and Reporting Program is to both observe and to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations. An adequate Monitoring and Reporting Program therefore ensures that BMPs are effectively reducing and/or eliminating pollutants at a facility, and is evaluated and revised whenever appropriate to ensure compliance with the General Permit.

Sections B(3)-(16) of the 1997 Permit set forth the monitoring and reporting requirements. As part of the Monitoring Program, all facility operators must conduct visual observations of storm water discharges and authorized non-storm water discharges, and collect and analyze samples of storm water discharges. As part of the Reporting Program, all facility operators must timely submit an Annual Report for each reporting year. The monitoring and reporting requirements of the 2015 Permit are substantially similar to those in the 1997 Permit, and in several instances more stringent.

### i.   Failure to Collect and Analyze Storm Water Discharges

The 1997 Permit requires dischargers to collect storm water samples during the first hour of discharge from the first storm event of the wet season, and at least one other storm event during the wet season, from all storm water discharge locations at a facility. *See* 1997 Permit, § B(5). The 2015 Permit now mandates that facility operators sample *four* (rather than two) storm water discharges from all discharge locations over the course of the reporting year. *See* 2015 Permit, §§ XI(B)(2), (3). Storm water discharges trigger the sampling requirement under the 1997 Permit when they occur during facility operating hours and are preceded by at least three working days without storm water discharge. *See* 1997 Permit, § B(5)(b). The 2015 Permit shortens the preceding no discharge period to 48 hours. *See* 2015 Permit, § XI(B)(1). A sample must be collected from each discharge point at the facility, and in the event that an operator fails to collect samples from the first storm event, the operators must still collect samples from two other storm events and "shall explain in the Annual Report why the first storm event was not sampled." *See* 1997 Permit, § B(5)(a). The Facility has repeatedly violated these monitoring requirements. Samples must be collected from each drainage area at all discharge locations and be representative of storm water associated with the Facility's industrial activity any commingled discharges. *See* 2015 Permit, § XI(B)(4); *see also* 1997 Permit § B(5)(a).

On information and belief, CSPA alleges that during the 2014-2015 wet season, CEMEX failed to collect and analyze storm water samples from a second storm event, and that during the 2015-2016 reporting year, CEMEX failed to collect and analyze storm water samples from a

Notice of Violations and Intent to File Suit

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 10 of 15

fourth event (which would have occurred during the first half of the reporting year). CSPA alleges that local precipitation data compared to dates when the Facility did collect storm water samples shows that discharges occurred on several dates during each of those wet seasons. Specifically, CSPA alleges that discharges occurred on the following dates[6]:

- October 31, 2014
- November 13, 2014
- November 19, 2014
- November 26, 2014
- February 6, 2015
- April 7, 2015
- April 24, 2015
- December 3, 2015
- December 18, 2015

This results in at least two violations of the General Permit.

In addition, on information and belief, CSPA alleges that CEMEX has taken samples of storm water discharges at the Facility that failed to comply with the General Permit's requirement that samples be preceded by a period without a discharge. Specifically, CSPA alleges that the following sampling dates were not preceded by the required period without a discharge. *See* 1997 Permit, § B(5)(b); 2015 Permit, § XI(B)(1).

- November 20, 2013
- January 5, 2016
- March 7, 2016

This results in at least three violation of the General Permit.

The above violations of the General Permit are ongoing. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, CEMEX is subject to penalties for violations of the General Permit and the Act's monitoring and sampling requirements since at least November 20, 2013.

### ii. Failure to Conduct Visual Observations of Storm Water Discharges

Section B of the 1997 Permit describes the visual monitoring requirements for storm water discharges. Facilities are required to make monthly visual observations of storm water discharges from all drainage areas (Section B(4)). Section B(7) requires that the visual

---

[6] These are dates that occurred on Monday through Friday and that CSPA alleges were preceded by the requisite number of days without a discharge.

Case 2:17-cv-00272-MCE-CKD   Document 1-1   Filed 02/08/17   Page 12 of 18

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 11 of 15

observations must represent the "quality and quantity of the facility's storm water discharges from the storm event." The requirement to make visual observations of storm water discharges from each drainage area is continued in Section XI(A) of the 2015 Permit.

On information and belief, CSPA alleges that CEMEX failed to conduct monthly visual observations of storm water discharges during numerous months during the past five years. On information and belief, based on local precipitation data compared to the dates in which the Facility did conduct monthly visual observation of storm water discharges, CSPA alleges that CEMEX failed to conduct monthly visual observations of storm water discharges at its outfalls during the following months:

- 2014 – January, May, October, November
- 2015 – April

This results in at least 5 violations of the General Permit. These violations of the General Permit are ongoing. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, CEMEX is subject to penalties for violations of the General Permit and the Act's monitoring and sampling requirements since at least January 30, 2014.

### C. Failure to Complete Annual Comprehensive Site Compliance Evaluation

The 1997 Permit, in relevant part, requires that the Annual Report include an Annual Comprehensive Site Compliance Evaluation Report ("ACSCE Report"). 1997 Permit, Section B(14). As part of the ACSCE Report, the facility operator must review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. The Annual Report must be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of his or her knowledge. The 2015 Permit now requires operators to conduct an Annual Comprehensive Facility Compliance Evaluation ("Annual Evaluation") that evaluates the effectiveness of current BMPs and the need for additional BMPs based on visual observations and sampling and analysis results. See 2015 Permit, § XV.

Information available to CSPA indicates that CEMEX has consistently failed to comply with Section B(14) of the 1997 Permit, and Section XV of the 2015 Permit. None of the Facility's ACSCE Reports provide an explanation of the Facility's failure to take steps to reduce or prevent high levels of pollutants observed in the Facility's storm water discharges. See 1997 Permit Receiving Water Limitation C(3) and C(4) (requiring facility operators to submit a report to the Regional Board describing current and additional BMPs necessary to prevent or reduce pollutants causing or contributing to an exceedance of water quality standards); see also 2015 Permit § X(B)(1)(b). The failure to assess the Facility's BMPs and respond to inadequacies in the ACSCE Reports negates a key component of the evaluation process required in self-monitoring programs such as the General Permit. Instead, CEMEX has not proposed any BMPs

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 12 of 15

that properly respond to EPA benchmark and water quality standard exceedances, in violation of the General Permit.

CSPA puts CEMEX on notice that its failures to submit accurate and complete ACSCE Reports are violations of the General Permit and the CWA. CEMEX is in ongoing violation of the General Permit every day the Facility operates without evaluating the effectiveness of BMPs and the need for additional BMPs. These violations are ongoing. Each of these violations is a separate and distinct violation of the General Permit and the CWA. CEMEX is subject to civil penalties for all violations of the CWA occurring since June 17, 2013.

> **D.     Failure to Prepare, Implement, Review and Update an Adequate Storm Water Pollution Prevention Plan.**

Under the General Permit, the State Board has designated the SWPPP as the cornerstone of compliance with NPDES requirements for storm water discharges from industrial facilities, and ensuring that operators meet effluent and receiving water limitations. Section A(1) and Provision E(2) of the 1997 Permit require dischargers to develop and implement a SWPPP prior to beginning industrial activities that meet all of the requirements of the 1997 Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges and authorized non-stormwater discharges from the facility, and to implement BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-stormwater discharges. See 1997 Permit § A(2); 2015 Permit § X(C). These BMPs must achieve compliance with the General Permit's effluent limitations and receiving water limitations. To ensure compliance with the General Permit, the SWPPP must be evaluated and revised as necessary. 1997 Permit §§ A(9), (10); 2015 Permit § X(B). Failure to develop or implement an adequate SWPPP, or update or revise an existing SWPPP as required, is a violation of the General Permit. 2015 Permit Factsheet § I(1).

Sections A(3)-A(10) of the 1997 Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a pollution prevention team; a site map; a list of significant materials handled and stored at the site; a description of potential pollutant sources; an assessment of potential pollutant sources; and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-stormwater discharges, including structural BMPs where non-structural BMPs are not effective. Sections X(D) – X(I) of the 2015 Permit set forth essentially the same SWPPP requirements as the 1997 Permit, except that all dischargers are now required to develop and implement a set of minimum BMPs, as well as any advanced BMPs as necessary to achieve BAT/BCT, which serve as the basis for compliance with the 2015 Permit's technology-based effluent limitations. See 2015 Permit § X(H). The 2015 Permit further requires a more comprehensive assessment of potential pollutant sources than the 1997 Permit; more specific BMP descriptions; and an additional BMP summary table identifying each identified area of industrial activity, the associated industrial pollutant sources, the industrial pollutants, and the BMPs being

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 13 of 15

implemented.  See 2015 Permit §§ X(G)(2), (4), (5).

      The 2015 Permit requires dischargers to implement and maintain, to the extent feasible, all of the following minimum BMPs in order to reduce or prevent pollutants in industrial storm water discharges: good housekeeping, preventive maintenance, spill and leak prevention and response, material handling and waste management, erosion and sediment controls, an employee training program, and quality assurance and record keeping.  See 2015 Permit, § X(H)(1).  Failure to implement all of these minimum BMPs is a violation of the 2015 Permit.  See 2015 Permit Fact Sheet § I(2)(o).  The 2015 Permit further requires dischargers to implement and maintain, to the extent feasible, any one or more of the following advanced BMPs necessary to reduce or prevent discharges of pollutants in industrial storm water discharges: exposure minimization BMPs, storm water containment and discharge reduction BMPs, treatment control BMPs, and other advanced BMPs.  See 2015 Permit, § X(H)(2).  Failure to implement advanced BMPs as necessary to achieve compliance with either technology or water quality standards is a violation of the 2015 Permit.  *Id*.  The 2015 Permit also requires that the SWPPP include BMP Descriptions and a BMP Summary Table.  See 2015 Permit § X(H)(4), (5).  A Facility's BMPs must, at all times, be robust enough to meet the General Permit's and 33 U.S.C. ¶ 1342(p)(3)(A)'s requirement that all discharges associated with industrial activities be subjected to BAT and BCT.  2015 Permit §§ V(A), I(A)(1), I(D)(31), I(D)(32); 1997 Permit, Effluent Limitation B(3), Receiving Water Limitation C(3).

      Despite these clear BMP requirements, CEMEX has been conducting and continues to conduct industrial operations at the Facility with an inadequately developed, implemented, and/or revised SWPPP.

      The Facility's SWPPP fails to comply with the requirements of Section X(G)(1)(e) of the 2015 Permit.   The SWPPP fails to contain an assessment of the non-storm water discharges ("NSWDs") at the Facility and a description of how all NSWDs have been eliminated.  On information and belief, CSPA alleges that CEMEX has failed to properly assess the Facility for NSWDs.

      The SWPPP fails to comply with the requirements of Section X(G)(2) of the 2015 Permit.   CEMEX has failed to identify where the minimum BMPs in different areas of the Facility will not adequately reduce the pollutants in the Facility's storm water dischargers and to identify advanced BMPs for those areas.

      The SWPPP fails to comply with the requirements of Section X(H) of the 2015 Permit.  The SWPPP fails to implement required advanced BMPs.

      Most importantly, the Facility's storm water samples and discharge observations have consistently exceeded EPA benchmarks and NALs, demonstrating the failure of its BMPs to reduce or prevent pollutants associated with industrial activities in the Facility's discharges consistent with the BAT and BCT requirements.  Despite these exceedances, CEMEX has failed to sufficiently update the Facility's SWPPP.  The Facility's SWPPP has therefore never achieved

Notice of Violations and Intent to File Suit

Case 2:17-cv-00272-MCE-CKD   Document 1-1   Filed 02/08/17   Page 15 of 18

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 14 of 15

the General Permit's objective to identify and implement BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges consistent with reductions achieved by implementing BAT and BCT at the Facility.

CSPA puts CEMEX on notice that it violates the General Permit and the CWA every day that the Facility operates with an inadequately developed, implemented, and/or revised SWPPP. These violations are ongoing, and CSPA will include additional violations as information and data become available. CEMEX is subject to civil penalties for all violations of the CWA occurring since at least June 17, 2013.

### III.     Persons Responsible for the Violations.

CSPA puts CEMEX Construction Materials Pacific, LLC, Bruce Eppler, Tony Skulick, Vincent Ramirez, and Brian Mastin on notice that they are the persons responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts CEMEX Construction Materials Pacific, LLC, Bruce Eppler, Tony Skulick, Vincent Ramirez, and Brian Mastin on notice that it intends to include those subsequently identified persons in this action.

### IV.     Name and Address of Noticing Parties.

The name, address and telephone number of the California Sportfishing Protection Alliance is as follows:

> Bill Jennings, Executive Director
> California Sportfishing Protection Alliance
> 3536 Rainier Avenue
> Stockton, CA 95204
> Tel. (209) 464-5067
> deltakeep@me.com

### V.     Counsel.

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

> Douglas J. Chermak
> Michael R. Lozeau
> Lozeau Drury LLP
> 410 12th Street, Suite 250
> Oakland, California 94607
> Tel. (510) 836-4200
> doug@lozeaudrury.com
> michael@lozeaudrury.com

Messrs. Eppler, Skulick, Ramirez, and Mastin
West Sacramento Ready Mix
October 28, 2016
Page 15 of 15

**VI.     Penalties.**

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects CEMEX to a penalty of up to $37,500 per day per violation for all violations occurring since October 28, 2011 up to and including November 2, 2015, and up to $51,570 for violations occurring after November 2, 2015.  In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)), permits prevailing parties to recover costs and fees, including attorneys' fees.

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  CSPA intends to file a citizen suit under Section 505(a) of the Act against CEMEX and its agents for the above-referenced violations upon the expiration of the 60-day notice period.  However, during the 60-day notice period, CSPA would be willing to discuss effective remedies for the violations noted in this letter.  If you wish to pursue such discussions in the absence of litigation, CSPA suggests that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  CSPA does not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Douglas J. Chermak
Lozeau Drury LLP
Attorneys for The California Sportfishing
Protection Alliance

Notice of Violations and Intent to File Suit

**SERVICE LIST – via certified mail**

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Thomas Howard, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Loretta Lynch, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Alexis Strauss, Acting Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Pamela C. Creedon, Executive Officer
Regional Water Quality Control Board
Central Valley Region
11020 Sun Center Drive #200
Rancho Cordova, CA  95670-6114

# ATTACHMENT A

Rain Dates, West Sacramento Ready Mix, Sacramento, CA

| | | |
|---|---|---|
| 9/2/2013 | 12/16/2014 | 1/13/2016 |
| 9/21/2013 | 12/17/2014 | 1/15/2016 |
| 11/19/2013 | 12/19/2014 | 1/16/2016 |
| 11/20/2013 | 2/6/2015 | 1/17/2016 |
| 12/6/2013 | 2/7/2015 | 1/18/2016 |
| 1/30/2014 | 2/8/2015 | 1/19/2016 |
| 2/5/2014 | 2/9/2015 | 1/22/2016 |
| 2/6/2014 | 3/11/2015 | 1/29/2016 |
| 2/7/2014 | 4/7/2015 | 2/17/2016 |
| 2/8/2014 | 4/24/2015 | 2/18/2016 |
| 2/9/2014 | 4/25/2015 | 3/4/2016 |
| 2/26/2014 | 10/3/2015 | 3/5/2016 |
| 2/28/2014 | 11/1/2015 | 3/6/2016 |
| 3/3/2014 | 11/2/2015 | 3/7/2016 |
| 3/5/2014 | 11/8/2015 | 3/10/2016 |
| 3/10/2014 | 11/9/2015 | 3/11/2016 |
| 3/26/2014 | 11/15/2015 | 3/12/2016 |
| 3/29/2014 | 12/3/2015 | 3/13/2016 |
| 3/31/2014 | 12/10/2015 | 4/9/2016 |
| 4/1/2014 | 12/13/2015 | 4/10/2016 |
| 4/25/2014 | 12/18/2015 | 4/22/2016 |
| 5/5/2014 | 12/20/2015 | 5/5/2016 |
| 9/25/2014 | 12/21/2015 | 5/7/2016 |
| 10/25/2014 | 12/23/2015 | 5/20/2016 |
| 10/31/2014 | 12/24/2015 | 10/14/2016 |
| 11/13/2014 | 12/25/2015 | 10/15/2016 |
| 11/19/2014 | 12/28/2015 | 10/16/2016 |
| 11/20/2014 | 12/29/2015 | 10/26/2016 |
| 11/22/2014 | 1/4/2016 | |
| 11/26/2014 | 1/5/2016 | |
| 12/8/2014 | 1/6/2016 | |

Notice of Violations and Intent to File Suit